**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA PANAMA CITY DIVISION**

**JAMES L. MACE,**
**Plaintiff,**

**v.** **No: 5:07cv109/RS/MD**

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**
**Defendant.**

---

## REPORT AND RECOMMENDATION

This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b) and Rules 72.1(A), 72.2(D) and 72.3 of the local rules of this court relating to review of administrative determinations under the Social Security Act and related statutes. It is now before the court pursuant to 42 U.S.C. § 405(g) of the Social Security Act for review of a final determination of the Commissioner of Social Security (Commissioner) denying claimant Mace's application for Supplemental Security Income (SSI) benefits under Title XVI of the Act.

Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.

## PROCEDURAL HISTORY

Plaintiff filed an application for SSI benefits with a claimed disability onset date of February 1, 1992 due to bipolar disorder. The application was denied initially

**and on reconsideration and plaintiff requested a hearing before an Administrative Law Judge (ALJ). A hearing was held on April 30, 2003 at which plaintiff was represented by counsel and testified. Plaintiff's sister appeared and testified, as did a vocational expert. The ALJ rendered an unfavorable decision on November 3, 2003 (tr. 19-25) and the Appeals Council declined review (tr. 7-11), making the decision of the ALJ the final decision of the Commissioner, and therefore subject to review in this court. *Falge v. Apfel*, 150 F.3d 1320 (11th Cir. 1998). This appeal followed.**

## FINDINGS OF THE ALJ

**Relative to the issues raised in this appeal, the ALJ found that plaintiff had a history of bipolar disorder and schizoaffective disorder but that he did not have a condition or combination of conditions that met or equaled one of the listings in 20 C.F.R. Part 404, Subpart P, Appendix 1; that plaintiff had the residual functional capacity to perform the duties of his past relevant work of labor at a factory as performed at the light level of exertion, and that he could also perform the duties of other jobs that existed in significant numbers in the economy, including assembler, janitor, and dishwasher; that his statements concerning his impairments and their impact on his ability to work were not entirely credible to the extent that he could be considered disabled; that he was a younger individual with an eleventh grade education with semi-skilled work experience; and that he was not disabled as defined in the Act.**

## STANDARD OF REVIEW

**The ALJ's decision will be reversed only if it is not supported by substantial evidence. *Falge, supra*. The court must determine whether the Commissioner's decision is supported by substantial evidence in the record and whether it is premised upon correct legal principles. *Chester v. Bowen*, 792 F.2d 129, 131 (11th**

**Cir. 1986). "A determination that is supported by substantial evidence may be meaningless . . . if it is coupled with or derived from faulty legal principles."** ***Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983). In determining whether substantial evidence exists, the court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's decision.** ***Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."** ***Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)(citations omitted). Findings of fact by the Commissioner that are supported by substantial evidence are conclusive. 42 U.S.C. § 405(g);** ***Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).**

**A disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).**

**Pursuant to 20 C.F.R. § 404.1520(a)-(f), the Commissioner analyzes a claim in five steps. A finding of disability or no disability at any step renders further evaluation unnecessary. The steps are:**

1. **Is the individual currently engaged in substantial gainful activity?**
2. **Does the individual have any severe impairment?**
3. **Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?**

**4. Does the individual have any impairments which prevent past relevant work?**

**5. Do the individual's impairments prevent any other work?**

**The claimant bears the burden of establishing a severe impairment that keeps him from performing his past work. If the claimant establishes such an impairment, the burden shifts to the Commissioner at step 5 to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform. *Chester v. Bowen*, supra, 792 F.2d at 131; *MacGregor v. Bowen*, 786 F.2d 1050, 1052 (11th Cir. 1986). If the Commissioner carries this burden, claimant must prove that he cannot perform the work suggested by the Commissioner. *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987).**

**PLAINTIFF'S MEDICAL HISTORY**

**This appeal centers on plaintiff's mental conditions - bipolar disorder and schizoaffective disorder, which the ALJ found to be severe (tr. 20). Plaintiff has been treated for these problems since as early as June 1987 (tr. 151), and was admitted at the Bay Medical Center pursuant to Florida's Baker Act in February 1992 (tr. 145). Later that year he was voluntarily admitted to the same facility and ultimately came under the care of two psychiatrists, Dr. Gray and later Dr. Gibson. On March 22, 2000, Dr. Gray noted that plaintiff had recently lost his mother to cancer and was feeling a little depressed. Otherwise, his mental state was as before (tr. 229), when he was doing "pretty well." (Tr. 233). A month later Dr. Gray decided to try plaintiff on Klonopin rather than Haldol because of his complaints of nightmares (tr. 227). On May 4, 2000, Dr. Gray noted that plaintiff reported doing much better on Lithium than he had on Klonopin (tr. 223). On June 5, 2000, Dr. Gray noted that plaintiff reported doing quite well once he was back on his Lithium (tr. 221). On July 24, 2000, Dr. Gray noted that plaintiff was in very good spirits and was doing well with**

**his medications. He did not assign a Global Assessment of Functioning (GAF)[1] score (tr. 217).**

**On October 16, 2000, Nile Remsing, psychiatric ARNP-CS, at the Life Management Center, noted that plaintiff's mental status examination was normal and that he was doing well on his medications, Haldol, Cogentin, and Lithium Citrate (tr. 215). Remsing also noted that plaintiff had been denied social security disability for the second time (tr. 215). On January 9, 2001, Dr. Gibson, who had by then become plaintiff's primary treating physician, noted that plaintiff's mental status examination was normal, his bipolar disorder was in remission, and his GAF was 55 (tr. 211). The progress notes of March 29, 2001 (tr. 207) and June 21, 2001 (tr. 203) reflected similar findings. In response to plaintiff's complaints of constant tiredness on the latter date, Dr. Gibson agreed to decrease plaintiff's Haldol and Cogentin dosages (tr. 203). On July 2, 2001, Dr. Gibson noted that plaintiff's mental status examination was normal and his GAF was 55 (tr. 195). He continued plaintiff on Lithium Citrate, Cogentin, and Haldol, "the same dose he had been on for years." (Tr. 195). The note for July 2, 2001 reflects similar findings and treatment plan (tr. 198). On December 13, 2001, plaintiff's GAF score was 65[2] and his bipolar affective disorder was in remission on medication (tr. 311). On January 9, 2002, and again on April 12, 2002, the GAF score was 68 (tr. 305, 303). On June 26, 2002, while there was no change in medications or symptoms noted, Dr. Gibson gave a GAF score of 70 (tr. 298). On July 16, 2002, Dr. Gibson noted a normal mental status examination, with a somewhat flat affect. Plaintiff's GAF score was 65, his bipolar disorder was in**

---

**[1] The GAF Scale is used to report the clinician's opinion as to an individual's level of functioning with regard to psychological, social, and occupational functioning. *See Diagnostic and Statistical Manual of Mental Disorders* at 34 (4th ed. rev. 2000) (*DSM-IV-TR*).**

**[2] A GAF of 61-70 suggests some mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships. See *DSM-IV-TR* at 34.**

**remission, and Dr. Gibson continued his current medications (tr. 292). On October 2, 2002, plaintiff's mental status examination was normal except for a flat affect, and his GAF was 65. No change was made to his medications (tr. 287). On December 16, 2002 plaintiff's mental status examination was normal, he showed no evidence of thought or mood disorder, and his affect was somewhat flat. Dr. Gibston gave him a GAF score of 65. He continued plaintiff on Lithium Citrate, Haldol, and Cogentin, and planned to see him in follow up three months later (tr. 283). On March 10, 2003, Dr. Gibson noted that plaintiff's mental status examination was normal, his affect was flat, and he continued to do well on his current medications. His current GAF was 65 (tr. 325). This was the most recent progress note of record at the time of the ALJ's hearing, on April 30, 2003.**

**At the hearing the ALJ indicated that he had no acceptable source evidence on plaintiff's claimed stomach problems, and asked plaintiff's counsel to supplement the record. In response she wrote to Dr. Gibson and asked him to agree or disagree to the contents of a telephone conversation between them. Dr. Gibson agreed to the accuracy of the letter. The relevant part of the letter read:**

> **Mr. Mace has been diagnosed as having Bipolar Affective Disorder. For Mr. Mace, this condition is permanent and characterized by bouts of severe depression and anxiety. Although Mr. Mace has been through the gamut of available medications, his disorder continues to cause significant impairment in his thought process, concentration, and carrying out activities of daily life. It is my understanding that you are willing to review the enclosed Mental Residual Functional Capacity Evaluation Form to more specifically address certain areas of mental functioning.**
>
> **In addition, Mr. Mace apparently has some severe side effects to the Lithium Citrate that he has been taking. More specifically, Mr. Mace described consistent nausea/vomiting along with diarrhea and intestinal cramping. It is my understanding these are known side effects of the Lithium Citrate and due to the severity of symptoms described you have recently changed Mr. Mace's prescription to Neurontin, 300 mg. twice per day. While changing the Lithium Citrate**

> **to Neurontin may decrease the gastrointestinal problems, attempts to alter Mr. Mace's prescription therapy in the past has decreased the overall effectiveness of the medication regiment. Therefore, it is a possibility that Mr. Mace may have to return to Lithium Citrate if the Neurontin does not provide effective control of the underlying disorder.**

**(Tr. 340-41). At the same time Dr. Gibson filled out a mental residual functional capacity questionnaire in which he opined that plaintiff's mental impairments in all areas were either marked or extreme (tr. 342-45).**

## DISCUSSION

**The plaintiff argues that the ALJ erred in failing to make a credibility determination, in failing to develop the record fully, in failing to give the opinion of the treating physician proper weight, and in failing to specify limitations of low stress work, and that plaintiff was disabled from his onset date as a matter of law. The Commissioner argues that the ALJ's findings were supported by substantial evidence and must, therefore, be sustained. The issue thus presented is whether the ALJ's decision that the plaintiff was not disabled, in light of his physical and mental condition, age, education, work experience, and residual functional capacity, is supported by substantial evidence in the record.**

**1. Credibility determination.**

**For his first ground for relief plaintiff contends that the ALJ erroneously failed to make a specific determination concerning plaintiff's credibility and that of his sister, who testified at the hearing. It is the law in this Circuit that when an ALJ's determination turns on credibility, the ALJ must make an explicit credibility finding and must state specific reasons for such finding. *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992). Failure to make such a finding is a ground for reversal. *Smallwood v. Schweiker*, 681 F.2d 585, 588-90 (11th Cir. 1987). However, if a credibility determination is not critical to a decision no specific finding is necessary,**

**but "the implication must be obvious to the reviewing court."** ***Foot v.*** **Chater, 67 F.3d 1553, 1562 (11th Cir. 1995). Tieniber** ***v. Heckler,*** **720 F.2d 1251, 1255 (11th Cir. 1983). Plaintiff's argument fails here because the ALJ's decision did not "turn on" plaintiff's or his sister's credibility. As discussed in the third section below, the ALJ's decision turned on his review of the opinion and records of Dr. Gibson. He found that Dr. Gibson's opinion was not credible, or at least was unsupported, because it differed from the numerous entries in his medical records. Moreover, the ALJ did address plaintiff's credibility in general, finding that "[t]he claimant's statements concerning his impairments and their impact on his ability to work are not entirely credible to the extent that he could be considered disabled . . . ." (Tr. 24). The ALJ's discussion of plaintiff's course of treatment was sufficiently detailed to make it obvious that he did not accept plaintiff's testimony as entirely credible. Plaintiff has not shown error and is not entitled to reversal on this ground.**

**2. Development of the record.**

**Plaintiff next contends that the ALJ should have contacted Dr. Gibson after he provided a post-hearing explanation for his opinion. The Social Security disability benefits process is inquisitorial rather than adversarial,** ***Sims v. Apfel*****, 530 U.S. 103, 110-111, 120 S.Ct. 2080, 2085, 147 L.Ed.2d 80 (2000),** ***Crawford & Company v. Apfel,*** **235 F.3d 1298 (11th Cir. 2000), and is informal.** ***Richardson v. Perales,*** **402 U.S. 389, 400-401, 91 S.Ct. 1420, 1426, 28 L.Ed.2d 842 (1971);** ***Kendrick v. Shalala*****, 998 F.2d 455, 456 (7th Cir. 1993); 20 C.F.R. § 404.900(b). With informality comes a duty to develop a complete record as is done by European magistrates.** ***Kendrick,*** **998 F.2d at 456. It is well established in this Circuit that the ALJ has an affirmative duty to develop a full and fair record.** ***Brown v. Shalala*****, 44 F.3d 931, 934 (11th Cir. 1995);** ***Lucas v. Sullivan*****, 918 F.2d 1567, 1573 (11th Cir. 1990);** ***Smith v. Bowen*****, 792 F.2d 1547, 1551 (11th Cir. 1986);** ***Cowart v. Schweiker*****, 662 F.2d 731, 735 (11th Cir. 1981). The duty to develop the record exists even though the plaintiff is represented by a**

**lawyer or paralegal. *Brown*, 44 F.3d at 934 (citing *Clark v. Schweiker*, 652 F.2d 399, 404 (5th Cir.Unit B July 1981)); *Smith*, 792 F.2d at 1551 (citing *Cowart*, 662 F.2d at 735). This duty requires that the ALJ "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts," be "especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited," *Cowart*, 662 F.2d at 735 (citations omitted), and "investigate the facts and develop the arguments both for and against granting benefits." *Crawford & Company, supra*, 235 F.3d at 1304.**

**That does not mean, however, that the ALJ must search to the last document to find every possible piece of relevant evidence. Rather, he must have sufficient evidence to decide the case. The seminal cases in this circuit on the ALJ's duty to develop the record are *Ford v. Secretary of Health and Human Services*, 659 F.2d 66 (5th Cir. Unit B Oct. 15, 1981) and *Reeves v. Heckler*, 734 F.2d 519 (11th Cir. 1984). Both held that it is not necessary for the ALJ to order a consultative examination unless the record established that such an examination was necessary to enable the ALJ to make a decision. Where he has sufficient information to decide the case, however, he can do so. *Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997) (holding that where the record is complete and adequate to a decision, no showing of prejudice is made).**

**Moreover, "[t]he claimant has the burden of proving he [or she] is disabled, and is therefore responsible for producing evidence in support of the claim." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003); 20 C.F.R. § 416.912(a), (c). Here Dr. Gibson provided an explanation for his opinion concerning plaintiff's limitations, and the ALJ reviewed it in detail (tr. 27). Although plaintiff suggests that the ALJ should have either accepted this explanation or asked for additional input, the ALJ had all the evidence he needed to make his decision. He was not obligated to go back to**

**Dr. Gibson for further explanation. Plaintiff has failed to show error, and is not entitled to reversal on this ground.**

**3. Opinion of treating physician.**

**Plaintiff next argues that the ALJ erred in not accepting Dr. Gibson's opinion. Absent good cause, the opinion of a claimant's treating physician must be accorded considerable or substantial weight by the Commissioner. *Phillips v. Barnhart*, 357 F.3d 1232, 1240-1241 (11th Cir. 2004); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Broughton v. Heckler*, 776 F.2d 960, 960-961 (11th Cir. 1985); *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986). "Good cause" exists when: (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Phillips,* 357 F.3d at 1241; see also *Lewis*, 125 F.3d at 1440 (citing cases).**

**If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. See *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnor v. Bowen,* 816 F.2d 578, 582 (11th Cir. 1987). When a treating physician's opinion does not warrant *controlling* weight, the ALJ must nevertheless weigh the medical opinion based on 1) the length of the treatment relationship and the frequency of examination; 2) the nature and extent of the treatment relationship; 3) medical evidence supporting the opinion; consistency with the record as a whole; 5) specialization in the medical issues at issue; and 6) other factors which tend to support or contradict the opinion. 20 C.F.R. 404.1527(d).**

**"When electing to disregard the opinion of a treating physician, the ALJ must clearly articulate its reasons." *Phillips*, 352 F.3d at 1241. Failure to do so is reversible error. *Lewis*, 125 F.3d at 1440 (citing *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986));[3] *see also Nyberg v. Commissioner of Social Security*, 179 Fed.Appx. 589, 591 (11th Cir. 2006) (Table, text in WESTLAW)(also citing *MacGregor*).**

**The ALJ's analysis of Dr. Gibson's opinions was thorough. He found that although Dr. Gibson believed that plaintiff was functionally disabled by his mental problems, the medical records going back over many years tended to show otherwise. When plaintiff was first seen for a mental health problem, his GAF score was 35. Within a short time after treatment began the GAF scores rose significantly, averaging from 55 to 70, and in more recent time was usually 65 or 70 (tr. 22). As noted above, a GAF score of 61 to 70 describes an individual who is generally functioning well with mild symptoms (tr. 22-23). The ALJ also noted the long-term consistency of these scores which, combined with the numerous office notes indicating that plaintiff's mental problems were controlled by medication, belied the very severe impairments Dr. Gibson noted in his post-hearing opinion. There was substantial record evidence to support the ALJ's findings on this issue, and plaintiff is not entitled to reversal.**

**4. Low stress work.**

**Finally, plaintiff argues that the ALJ's hypothetical to the testifying vocational expert did not contain a complete description of plaintiff's condition as ultimately found by the ALJ. A hypothetical question must comprehensively describe the plaintiff's condition, and vocational expert testimony that does not accurately address that condition cannot be considered substantial record evidence. *Pendley v. Heckler,* 767 F.2d 1561, 1563 (11th Cir. 1985). However, "the ALJ [is] not required**

---

**[3]*MacGregor* further held that "Where the [Commissioner] has ignored or failed properly to refute a treating physician's testimony, we hold as a matter of law that he has accepted it as true." 786 F.2d at 1053.**

**to include findings in the hypothetical that the ALJ had properly rejected as unsupported."** ***Crawford v. Commissioner of Social Security*****, 363 F.3d 1155, 1161 (11th Cir. 2004). Plaintiff contends that the ALJ found that plaintiff's residual functional capacity included a limitation to a "low stress" job, but that this limitation was not described sufficiently in the hypothetical to allow the vocational expert to respond appropriately. Contrary to plaintiff's argument, the ALJ specifically defined "low stress" as part of his question to the vocational expert. He stated: "The work must be simple, unskilled, repetitive and routine. The work must be low-stress, no regular contact with the general public - - not saying no contact - - but no regular contact with the general public . . . ." ( Tr. 389). The ALJ's explanation of what he meant by low stress was sufficient for the vocational expert's purposes, and the vocational expert obviously understood what was meant because he described jobs that such a hypothetical person could do, including plaintiff's past relevant work as plaintiff described it. Plaintiff has not shown error on this issue, and is not entitled to reversal.**

**Accordingly, it is respectfully RECOMMENDED that the decision of the Commissioner be AFFIRMED, that this action be DISMISSED and that the clerk be directed to close the file.**

**At Pensacola, Florida this 28th day of July, 2008.**

/s/ *Miles Davis*

**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO PARTIES**

**Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy hereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of any objections shall be served upon any other parties. Failure to object may limit the scope of appellate review of factual findings. See 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).**